**PULLMAN CONSTRUCTION INDUSTRIES, INC.,**
Plaintiff–Appellee,

v.

**UNITED STATES of America,**
Defendant–Appellant.

No. 93–2495.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 19, 1994.

Decided May 4, 1994.

Michael J. Shepard, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Div., Chicago, IL, Gary R. Allen, Robert W. Metzler (argued) and William S. Estabrook, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for appellant.

Larry M. Wolfson, Jenner & Block; Stephen T. Bobo (argued), Steven B. Towbin, Towbin & Zazove; and David A. Newby, D'Ancona & Pflaum, Chicago, IL, for debtor-appellee.

Before CUMMINGS, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ In May 1987 Pullman Construction Industries commenced a reorganization in bankruptcy. The United States filed claims in the reorganization, seeking to recover taxes due for 1987 (and other years, which are not pertinent). Pullman responded by asking the bankruptcy court to recover, as preferential transfers, approximately $500,000 paid toward tax obligations during the 90 days before the filing of the petition in bankruptcy. 11 U.S.C. § 547(b). By making claims against Pullman's estate the United States waived its sovereign immunity to the extent the claim against it "arose out of the same transaction or occurrence out of which such governmental unit's claim arose", 11 U.S.C. § 106(a), or may be set off to reduce the government's claim against the estate, 11 U.S.C. § 106(b). *See also United States v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). The bankruptcy court held that the United States' claim for additional taxes and the estate's claim to recover preferential tax payments "arose out of the same transaction" and denied the United States' motion to dismiss. The district court affirmed. 153 B.R. 539 (N.D.Ill.1993). The United States immediately appealed to us.

■ To date, the bankruptcy court has not decided how much, if any, of the amount Pullman paid during February–May 1987 is avoidable under § 547(b). Until its claim has been quantified, the decision is not "final" even under the elastic definition that term receives in bankruptcy practice. *In re Stoecker*, 5 F.3d 1022, 1027 (7th Cir.1993); cf. *In re Morse Electric Co.*, 805 F.2d 262, 264 (7th Cir.1986). The United States candidly admits that its appeal cannot be sustained under 28 U.S.C. § 158(d) as one from a "final decision." Instead, it argues, an opinion denying a motion asserting the sovereign immunity of the United States may be appealed as a collateral order under a series of cases permitting interlocutory appeal when the defendant asserts a "right not to be sued."

Descriptions of the United States' sovereign immunity often refer to freedom from suit as well as freedom from an obligation to pay damages. *E.g., FDIC v. Meyer,* —— U.S. ——, —— - ——, 114 S.Ct. 996, 1000–02, 127 L.Ed.2d 308 (1994); *Minnesota v. United States,* 305 U.S. 382, 387, 59 S.Ct. 292, 294, 83 L.Ed. 235 (1939). We know from *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,.* —— U.S. ——, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993), that states may take interlocutory appeals to vindicate their immunity from suit under the eleventh amendment, and from *Segni v. Commercial Office of Spain,* 816 F.2d 344, 346–47 (7th Cir.1987), that foreign nations likewise may obtain interlocutory review of decisions denying their claims of immunity from suit. *See also Rush–Presbyterian–St. Luke's Medical Center v. Hellenic Republic,* 877 F.2d 574, 576 n. 2 (7th Cir.1989); *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C.Cir.1990). The United States insists that it deserves no lesser protection.

If this is all so clear, one wonders why, in the entire existence of the United States, the federal government has never before taken an interlocutory appeal to assert sovereign immunity. Our case appears to be the first. Before today the United States has occasionally sought and received permission to take an interlocutory appeal on this question under 28 U.S.C. § 1292(b)(2), a puzzling step if the federal government could appeal of right. *E.g., South Delta Water Agency v. Department of the Interior,* 767 F.2d 531, 535 (9th Cir.1985). Perhaps the explanation lies in the newfangled nature of the doctrine permitting appeals based on claims of rights to be free from litigation, a doctrine that acquires its first purchase in *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). *Metcalf & Eddy* extends *Abney* to a governmental body's right to avoid litigation in another sovereign's courts—an important qualifier, because the United States is no stranger to litigation in its own courts. Congress has consented to litigation in federal courts seeking equitable relief from the United States, *see* 5 U.S.C. § 702; *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); and 11 U.S.C. § 106 gives consent in limited circumstances to litigation seeking money. Indeed, the United States Code is riddled with statutes authorizing relief against the United States and its agencies—the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80; the Tucker Act, 28 U.S.C. §§ 1346(a), 1491(a); the whole jurisdiction of the Court of Federal Claims, 28 U.S.C. §§ 1491–1509; dozens if not hundreds of sue-and-be-sued clauses; the list can be extended without much effort.

Now that 5 U.S.C. § 702 exposes the United States to equitable relief, it is difficult to speak of federal sovereign immunity as a "right not to be sued." It is quite unlike the eleventh amendment, which provides that "[t]he judicial power of the United States shall not be construed to extend" to suits against states, and the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602–05, which gives foreign governments "immunity from the jurisdiction" of our courts. The only portion of the United States' original immunity from suit that Congress continues to assert is a right not to pay damages—a right circumscribed by statutes such as § 106. Federal sovereign immunity today is nothing but a condensed way to refer to the fact that monetary relief is permissible only to the extent Congress has authorized it, in line with Art. I, § 9, cl. 7: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law". Instead of exposing the United States to suit under the general federal-question jurisdiction of 28 U.S.C. § 1331, Congress has elected to be more specific. An elaborate system permitting some monetary claims and limiting or forbidding others does not imply that the United States retains a general "right not to be sued" in its own courts, for civil litigation in general or taxation in particular.

Quite the contrary, there is a venerable tradition of litigation between the United States and taxpayers to determine amounts due and recover overpayments. Until 1966 courts regularly entertained suits against Collectors (later District Directors) to fix liability and recover excess collections. *See, e.g., Elliott v. Swartwout,* 35 U.S. (10 Pet.) 137, 9 L.Ed. 373 (1936); *Bend v. Hoyt,* 38 U.S. (13 Pet.) 263, 10 L.Ed. 154 (1839); *Phil-*

*adelphia v. Collector,* 72 U.S. (5 Wall.) 720, 18 L.Ed. 614 (1866). Antonin Scalia, *Sovereign Immunity and Nonstatutory Review of Federal Administrative Action: Some Conclusions from the Public–Lands Cases,* 68 Mich.L.Rev. 867, 915–17 (1970), collects and discusses these and many other cases. In 1966 Congress abolished the common-law action. Nonetheless, taxpayers may litigate in the Tax Court and Court of Federal Claims before paying, and they may sue for refunds in the District Courts. 28 U.S.C. §§ 1346(a)(1), 1507; 26 U.S.C. § 6213. No one could argue with a straight face that the United States has, or ever had, a general "right not to be sued" concerning taxes. Congress requires litigants to follow certain forms and restricts available remedies, but implementing these restrictions is an ordinary task of statutory interpretation, for which interlocutory appeals are no more necessary (or appropriate) than they are in the bulk of federal litigation.

■ Does the word "immunity" in "sovereign immunity" itself support interlocutory appeal? Surely not, as the Court held in *Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). Defendant in that case insisted that a treaty immunized him from service of process, and when the district court rejected that argument he immediately appealed. The Court held that the collateral order doctrine did not authorize such an appeal, distinguishing among kinds of immunities. Sometimes the word connotes a right not to be tried, which must be vindicated promptly. Sometimes the word means only a right to *prevail* at trial—a right to win, indistinguishable from all the other reasons why a party may not have to pay damages. Confusing the two would undermine the final decision requirement.

■ Since *Abney* it has been necessary to distinguish between a right not to be sued and a right the vindication of which ends the litigation. *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 269, 102 S.Ct. 3081, 3084, 73 L.Ed.2d 754 (1982); *United States v. MacDonald,* 435 U.S. 850, 860 n. 7, 98 S.Ct. 1547, 1552 n. 7, 56 L.Ed.2d 18 (1978). Only an "explicit statutory or constitutional guar-antee that trial will not occur" creates the sort of right that supports immediate review. *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 801, 109 S.Ct. 1494, 1499, 103 L.Ed.2d 879 (1989). See also, e.g., *Lauro Lines s.r.l. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). The eleventh amendment and the FSIA create genuine rights not to be sued in federal court. "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive power of judicial tribunals at the instance of private parties." *In re Ayers,* 123 U.S. 443, 505, 8 S.Ct. 164, 182, 31 L.Ed. 216 (1887). So too with the FSIA, which is designed to promote harmonious international relations by respecting governmental immunities recognized in international law while permitting claims arising out of ordinary commercial activities. *See Saudi Arabia v. Nelson,* —— U.S. ——, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). We have demonstrated that the Congress, on behalf of the United States, has surrendered any comparable right not to be a litigant in its own courts.

■ Today's case provides a perfect example. The United States exposed itself to the prospect of recovery under § 106 by filing a claim against Pullman's estate in bankruptcy. If it prevails on this appeal, the litigation will not come to an end; it will continue with the same parties, exploring the same general question: what are Pullman's tax obligations for 1987? The bankruptcy court, the district court, and then this court will consider this subject no matter what happens on the United States' current appeal. Far from asserting a right not to be a litigant, the United States is asserting a defense to the payment of money. It wants a court to determine the correct amount of Pullman's obligations, but it also wants to ensure that dollars flow in only one direction: from Pullman to the Treasury. This is far removed from the kinds of immunities from the judicial process involved in *Metcalf & Eddy, Segni,* and similar cases. Congress is free to authorize interlocutory appeals by the United States, but unless it does so the federal government, like private litigants, must wait for the final decision.

The appeal is dismissed for want of jurisdiction.