64 F.3d 1352
 64 USLW 2162, 95 Cal. Daily Op. Serv. 7044,
95 Daily Journal D.A.R. 12,046
 STATE OF ALASKA, Plaintiff-Appellee,
v.
UNITED STATES of America, Bruce Babbitt, Secretary of the
Interior; Edward F. Spang, State of Alaska
Director, Bureau of Land Management;
John M. Morehead; Walter
Steiglitz,
Defendants-Appellants,
and
Doyon, Ltd., and Chalkyitsk Native Corp., Defendants.
 No. 94-36176.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 8, 1995.
Decided Sept. 6, 1995.
 
 Edward J. Shawaker, United States Department of Justice, Environment and Natural Resources Division, Washington, DC, for defendants-appellants.
 Jennifer A. Kohout, Assistant Attorney General, Anchorage, AK, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Alaska.
 Before: HALL, WIGGINS, and KLEINFELD, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 The United States appeals interlocutorily from the district court's order denying the United States' motion to dismiss this action on the grounds of sovereign immunity. We hold that the collateral order doctrine does not allow immediate appeal of such an order, and we dismiss the appeal for lack of jurisdiction.
 
 
 2
 The State of Alaska brought this action to quiet title to sections of the beds of the Kandik, Nation, and Black Rivers.[1] The district court's jurisdiction is premised on 28 U.S.C. Secs. 1346(f) and 2409a, which allow the United States to be named as a defendant in actions to quiet title to real property "in which the United States claims an interest." Section 2409a(a). The United States, although it refused to disclaim title, sought dismissal of the suit on the grounds that it had never actively "claim[ed] an interest" in the river beds within the meaning of those sections, and, consequently, there had been no waiver of sovereign immunity. The district court denied the motion, finding that the United States claimed an interest in the land within the meaning of the statute. The United States immediately appealed the district court's decision without seeking permission under 28 U.S.C. Sec. 1292(b) to file an interlocutory appeal.[2] Instead, the United States contends that this court has jurisdiction under the collateral order doctrine.
 
 
 3
 The collateral order doctrine is a "practical construction" of the final judgment rule of 28 U.S.C. Sec. 1291. Digital Equipment Corp. v. Desktop Direct, Inc., --- U.S. ----, ----, 114 S.Ct. 1992, 1995, 128 L.Ed.2d 842 (1994). The doctrine allows appeals from "a small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). The doctrine applies only to:
 
 
 4
 those district court decisions that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action.
 
 
 5
 Digital Equipment, --- U.S. at ---- - ----, 114 S.Ct. at 1995-96 (the "Cohen requirements") (enumeration added) (internal quotations and citations omitted).[3]
 
 
 6
 This Circuit has never had occasion to decide whether the denial of sovereign immunity to branches of the federal government is an immediately appealable collateral order.[4] It is settled that immediate appeals may be taken from orders denying claims of immunity on one of the following grounds: the sovereign immunity granted to states under the Eleventh Amendment, Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, --- U.S. ----, ----, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993); the sovereign immunity of Guam, Marx v. Guam, 866 F.2d 294, 296 (9th Cir.1989); foreign sovereign immunity derived from the Foreign Sovereign Immunities Act, 28 U.S.C. Secs. 1602-1611, Compania Mexicana De Aviacion, S.A. v. United States Dist. Ct., 859 F.2d 1354, 1356 (9th Cir.1988); the President's absolute immunity, Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); a government official's qualified immunity, Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); intramilitary immunity based on the doctrine of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), Lutz v. Secretary of the Air Force, 944 F.2d 1477 (9th Cir.1991); and a criminal defendant's double jeopardy claim, Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).
 
 
 7
 At first glance, federal sovereign immunity seems to fit comfortably among the types of immunities for which immediate appeal is appropriate. In Digital Equipment the Supreme Court observed that "orders denying certain immunities are strong candidates for prompt appeal under Sec. 1291." --- U.S. at ----, 114 S.Ct. at 1998. This is because certain immunities are more likely to meet the third prong of the Cohen analysis: where the immunity guarantees a "right not to stand trial," that right may be "irretrievably lost" if immediate review is not available. The Supreme Court in Digital Equipment hastened to add, however, that "a party's ability to characterize a district court's decision as denying an irreparable 'right not to stand trial' altogether is [not] sufficient ... for a collateral order appeal," because virtually every right or procedural step that can be enforced by pretrial dismissal could be characterized as a right not to stand trial. --- U.S. at ----, 114 S.Ct. at 1998.
 
 
 8
 We hold that, despite the label "immunity," federal sovereign immunity is not best characterized as a "right not to stand trial altogether." The only other case to consider the issue, Pullman Construction, concluded that federal sovereign immunity was more accurately considered a right to prevail at trial, i.e., a defense to payment of damages. 23 F.3d at 1169. Like immunity from service of process (leading to lack of personal jurisdiction), federal sovereign immunity is better viewed as a right not to be subject to a binding judgment. Such a right may be vindicated effectively after trial. See Van Cauwenberghe v. Biard, 486 U.S. 517, 524, 108 S.Ct. 1945, 1950, 100 L.Ed.2d 517 (1988).
 
 
 9
 Pullman Construction concluded that orders denying federal sovereign immunity are not immediately appealable. 23 F.3d at 1169. We agree for the following reasons, summarized here and discussed more fully below. Federal sovereign immunity does not implicate the sovereignty concerns that motivate immediate appeal of orders denying Eleventh Amendment immunity or foreign sovereign immunity. Likewise, denial of federal sovereign immunity need not be reviewed with the same urgency as the denial of official immunity or double jeopardy claims. The interest served by federal sovereign immunity (the United States' freedom from paying damages without Congressional consent) may be served equally well if review follows a final judgment on the merits. Because there is no sufficiently important interest in immediate review, the third prong of the Cohen test is not satisfied, and the order denying federal sovereign immunity is not an immediately appealable collateral order. This result is confirmed when one considers the relative inefficiency of applying the collateral order doctrine to federal sovereign immunity cases.
 
 I.
 
 10
 Federal sovereign immunity is readily distinguishable from the states' immunity under the Eleventh Amendment and foreign governments' immunity under the Foreign Sovereign Immunities Act. The latter two doctrines allow one sovereign entity the right to avoid, altogether, being subjected to litigation in another sovereign's courts.[5] Pullman Constr., 23 F.3d at 1169. Similar sovereignty concerns are not implicated by the maintenance of suit against the United States in federal court.[6] Federal sovereign immunity has had such broad exceptions carved out of it that, as Pullman Construction concluded, "Congress, on behalf of the United States, has surrendered any comparable right not to be a litigant in its own courts." Id.[7] In the present day, federal sovereign immunity serves merely to channel litigation into the appropriate avenue for redress, ensuring that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." Pullman Constr. at 1168 (quoting Art. I, Sec. 9, cl. 7). "Congress requires litigants to follow certain forms and restricts available remedies, but implementing these restrictions is an ordinary task of statutory interpretation, for which interlocutory appeals are no more necessary (or appropriate) than they are in the bulk of federal litigation." Pullman Constr., 23 F.3d at 1169.
 
 II.
 
 11
 Because federal sovereign immunity is a defense to liability rather than a right to be free from trial, the benefits of immunity are not lost if review is postponed. The United States argues that this is not the case and that its claim would, in fact, be "effectively unreviewable" at a later point: If this case goes to trial, the United States will have to decide whether to claim or disclaim the lands in question. According to the United States, doing so will moot the argument that the courts lack jurisdiction because the United States has never claimed or disclaimed the lands. The United States claims that the essence of its sovereign immunity is freedom from having to appear in court and take a position, and hence the benefits of immunity will be irretrievably lost if immediate appeal is denied.
 
 
 12
 This argument fails for two reasons. First, the argument is too particularized to affect our inquiry. "[T]he issue of appealability under Sec. 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a particular injustice averted, by a prompt appellate court decision." Digital Equipment, --- U.S. at ----, 114 S.Ct. at 1996 (internal quotation omitted). The issue, therefore, is whether denial of federal sovereign immunity in general is immediately appealable, not whether immediate appeal is appropriate when construing the waiver embodied in the Quiet Title Act.
 
 
 13
 Second, "the mere identification of some interest that would be 'irretrievably lost' has never sufficed to meet the third Cohen requirement." Id. at ----, 114 S.Ct. at 1998. The interest that would be lost must also be "important," which in this context means "weightier than the societal interests advanced by the ordinary operation of final judgment principles." Id. at ----, ----, 114 S.Ct. at 2001, 2002. No such weighty interest is present in orders denying sovereign immunity.
 
 
 14
 The only foreseeable hardship inflicted on the United States by postponing review of sovereign immunity issues is the need to prepare for trials. That hardship alone is generally not sufficient to justify immediate appeal, as the Supreme Court has pointed out:
 
 
 15
 Admittedly, there is value ... in triumphing before trial, rather than after it, regardless of the substance of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial.
 
 
 16
 Van Cauwenberghe, 486 U.S. at 524, 108 S.Ct. at 1951 (quoting United States v. MacDonald, 435 U.S. 850, 860 n. 7, 98 S.Ct. 1547, 1552 n. 7, 56 L.Ed.2d 18 (1978)).
 
 
 17
 "[T]he substance of the rights entailed" is not urgent in the context of claims of federal sovereign immunity. In this respect, claims of sovereign immunity contrast sharply with claims of double jeopardy or official immunity. In the latter type of cases, the judicial inquiry itself, rather than just a merits judgment, causes the disruption that the doctrine of immunity was designed to prevent. See, e.g., Abney, 431 U.S. at 659, 97 S.Ct. at 2040 (double jeopardy); Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815 (qualified immunity); Lutz, 944 F.2d at 1481 (intramilitary immunity). The concept of qualified immunity is animated by concern about the burden of discovery and the need for government officials to act "with independence and without fear of consequences." Mitchell, 472 U.S. at 525, 105 S.Ct. at 2815. Immediate appeals are permitted because if officials were unable to obtain prompt review of denials of qualified immunity, the substance of the immunity would be lost. That concern is not the foundation of federal sovereign immunity. Suits that, for a technical reason, do not satisfy the strict requirements of statutes waiving sovereign immunity are no more fundamentally burdensome or disruptive than suits that do satisfy those requirements.
 
 
 18
 The denial of federal sovereign immunity, we conclude, imposes no hardship on the United States that is qualitatively different from, or weightier than, the hardship imposed by the denial of such defenses as the statute of limitations or res judicata, both of which have been held to be effectively reviewable following trial. See United States v. Weiss, 7 F.3d 1088 (2d Cir.1993) (statute of limitations); In re Corrugated Container Antitrust Litigation, 694 F.2d 1041 (5th Cir.1983) (res judicata ).
 
 III.
 
 19
 Not only may the denial of federal sovereign immunity be effectively reviewed after trial, but it may also be reviewed more efficiently at that time. Consider again Pullman Construction's observation on federal sovereign immunity: "Congress requires litigants to follow certain forms and restricts available remedies, but implementing these restrictions is an ordinary task of statutory interpretation." 23 F.3d at 1169. In most situations where the defense of sovereign immunity is denied, the issue will be whether the facts are such that the plaintiff's claim fits under the relevant statute waiving immunity. (The current case is typical: sovereign immunity has been waived if and only if the United States has "claim[ed] an interest" in the lands within the meaning of section 1346(f).) A motion for dismissal based on federal sovereign immunity is, therefore, strikingly similar to a motion for dismissal for failure to state a claim, see Fed.R.Civ.P. 12(b)(6), or a motion for summary judgment, see Fed.R.Civ.P. 56, neither of which is immediately appealable under the collateral order doctrine. All three types of orders give rise to similar efficiency concerns: Because the legal inquiry (whether the plaintiff's claim falls within the language of a statute or common law cause of action) is highly fact-specific, appellate resources would be squandered if appeals were heard before the relevant facts have been fully developed.[8] Appellate courts might routinely be asked to review the same basic claim at two different times with reference to two different sets of facts: once on immediate appeal, assuming the facts on the face of the complaint, and (if dismissal is unwarranted on those facts) again after trial on appeal of the denial of a motion for judgment as a matter of law.[9]
 
 
 20
 For the reasons above, we hold that the district court's order denying the United States' motion to dismiss based on sovereign immunity is not immediately appealable under the collateral order doctrine. The United States' appeal is
 
 
 21
 DISMISSED.
 
 
 
 [1]
 Alaska claims title under the "equal footing doctrine" and the Submerged Lands Act of 1953, 43 U.S.C. Sec. 1311(a). The central issue is navigability: the parties agree that if the rivers were navigable when Alaska entered the Union, they became property of Alaska at that time, but if they were not navigable, they remained the property of the United States. See State of Alaska v. Ahtna, Inc., 891 F.2d 1401, 1404 (9th Cir.1989)
 
 
 [2]
 Section 1292(b) allows the district court to certify an order for interlocutory appeal if (1) the order involves a "controlling question of law as to which there is substantial ground for difference of opinion," and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."
 
 
 [3]
 Digital Equipment suggested two other guidelines as well: (1) immunities from trial stemming from public law are more likely to be immediately appealable than immunities derived from contract; and (2) immunities derived from the Constitution or statutes are more likely to be appealable because their importance is presumed. Id. at ----, ----, 114 S.Ct. at 2000, 2001. These guidelines are not conclusive. Federal sovereign immunity derives from public law, but it is not explicit in either the Constitution or statutes
 
 
 [4]
 In fact, Pullman Construction Industries v. United States claims to be the only case where the federal government has ever taken an interlocutory appeal to assert sovereign immunity without seeking and receiving permission under 28 U.S.C. Sec. 1292(b). 23 F.3d 1166, 1168 (7th Cir.1994). Pullman Construction held that the collateral order doctrine did not apply to an order denying federal sovereign immunity
 
 
 [5]
 Parallel sovereignty concerns are served by cases holding that the supremacy of federal law may, in some circumstances, be vindicated prior to a final judgment on the merits. See, e.g., Constr. Laborers v. Curry, 371 U.S. 542, 548, 83 S.Ct. 531, 535, 9 L.Ed.2d 514 (1963) (the United States Supreme Court has certiorari jurisdiction over an appeal from the Georgia Supreme Court's decision asserting state court jurisdiction over a case that was within the exclusive domain of the National Labor Relations Board)
 
 
 [6]
 The analysis would be different if an attempt were made to subject the United States to suit in state court. Cf. Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963) (state court decisions rejecting a party's federal law claim that he is not subject to suit before a particular tribunal are "final" for purposes of the Supreme Court's certiorari jurisdiction under 28 U.S.C. Sec. 1257)
 
 
 [7]
 See, e.g., 5 U.S.C. Sec. 702 (exposing the United States to orders of equitable relief); 11 U.S.C. Sec. 106 (giving consent to litigation seeking money if claims arise out of the same transaction or occurrence as a claim made by the government, or if the private party's claim may set off the government's claim); 28 U.S.C. Secs. 2671-80 (the Federal Tort Claims Act); 28 U.S.C. Secs. 1346(a), 1491(a) (the Tucker Act); 28 U.S.C. Secs. 1491-1509 (jurisdiction of the Court of Federal Claims). In fact, Pullman Construction concluded, "The only portion of the United States' original immunity from suit that Congress continues to assert is a [circumscribed] right not to pay damages.... Federal sovereign immunity today is nothing but a condensed way to refer to the fact that monetary relief is permissible only to the extent Congress has authorized it." 23 F.3d at 1168
 
 
 [8]
 If, in any particular case, it would be more efficient to decide the issue before trial, the aggrieved party would be free to seek interlocutory appeal under 28 U.S.C. Sec. 1292(b)
 
 
 [9]
 This is exactly what happens in qualified immunity cases. In the context of qualified immunity, the Supreme Court has determined that prompt appeal is worth the added burden on judicial resources. See Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816. As discussed above, however, the benefits of prompt review in sovereign immunity cases are not so compelling