**E-FILED**
**CNMI SUPREME COURT**
E-filed: Nov 13 2024 03:07PM
Clerk Review: Nov 13 2024 03:08PM
Filing ID: 74993086
Case No.: 2023-SCC-0014-CIV
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**JAMES QUITUGUA REYES,**
*Plaintiff-Appellee,*

*v.*

**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,**
*Defendant-Appellant.*

**Supreme Court No. 2023-SCC-0014-CIV**

---

**ORDER DISMISSING APPEAL**

**Cite as: 2024 MP 8**

Decided November 13, 2024

_____

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
JUSTICE PRO TEMPORE SABRINA S. MCKENNA

_____

Superior Court Civil Action No. 19-0076-CV
Associate Judge Wesley M. Bogdan, Presiding

_____

MANGLOÑA, J.:

¶ 1    Plaintiff-Appellee James Quitugua Reyes ("Reyes") moves to dismiss Defendant-Appellant Commonwealth's appeal of the trial court's partial summary judgment order determining that the Commonwealth could be sued in its own name, without naming any specific employee, under the Government Liability Act ("GLA"), 7 CMC §§ 2201–10. Reyes argues that this Court should dismiss the appeal for lack of jurisdiction because the order is neither a final judgment nor appealable under the collateral order doctrine. For the reasons stated below, we GRANT the motion to dismiss.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    Reyes filed a complaint against the Commonwealth for negligence relating to an assault which occurred while he was acting as a family escort through the medical referral program. Reyes did not name a specific employee as defendant in the suit, instead suing the Commonwealth directly. The Commonwealth alleged that the GLA requires individual employees be named in negligence suits and that the GLA does not create consent to litigation by the Commonwealth without a named employee in the suit, since the GLA applies exclusively to employees acting within the scope of their duties.

¶ 3    The trial court granted partial summary judgment to Reyes on the issue and determined that he was not required to name a specific employee in order to sue the Commonwealth in tort. The court found no deficiency in his complaint and ordered the case set for a bench trial. The Commonwealth then appealed the partial summary judgment order, alleging that the Commonwealth would lose a right to sovereign immunity if required to go to trial. Reyes now moves to dismiss the appeal for lack of subject matter jurisdiction.

## II. JURISDICTION

¶ 4    We have jurisdiction over final orders and judgments of the trial court. NMI CONST. art. IV, § 3. Partial summary judgment orders are generally not final and unappealable. *Marianas Pub. Land Corp. v. Guerrero*, 2 NMI 301, 306 (1991). An order is final "if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Nev. D.H.H.S. Div. of Welfare v. Lizama*, 2017 MP 16 ¶ 8. This partial summary judgment is decidedly not final, as the case has been ordered to continue to trial and the one claim in the complaint is yet to be litigated. An exception to the finality requirement is thus necessary for the Court to assert appellate jurisdiction.

¶ 5    Through the common law collateral order doctrine, we may review a non-final order if it conclusively determines a disputed question, resolves an important issue completely separate from the merits of the complaint, and is effectively unreviewable on appeal from a final judgment. *Commonwealth v. Guerrero*, 3 NMI 480, 482 (1993). Reyes argues the partial summary judgment is not an appealable order since it is neither final nor subject to the collateral order doctrine. The parties agree that the appealed order is not final, but that it does satisfy the first two elements of the collateral order doctrine—it

conclusively determined the disputed question regarding whether an employee needed to be named as a defendant and resolved that issue completely separate from the merits. We thus narrow our discussion to the final element: whether the partial summary judgment order is "effectively unreviewable on appeal from a final judgment." *Takasi v. Yoshizawa*, 2022 MP 01 ¶ 4.

### III. DISCUSSION

¶ 6    To be effectively unreviewable on appeal, "the issue must be one that cannot be addressed through reversal or other means upon later appeal" because "it would be too late for us to correct any injury done." *Id.* at ¶ 7 (citing *Guerrero*, 3 NMI at 482, and *Camacho v. Demapan*, 2010 MP 3 ¶ 28). "The only situation where an issue would not be reviewable as part of a final judgment is where it involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Pac. Amusement v. Villanueva*, 2005 MP 11 ¶ 20 (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)).

¶ 7    This asserted right, in order to qualify as an injury for the third element of the collateral order doctrine, must be a sufficiently countervailing public interest to outweigh the "societal interests" advanced by avoiding piecemeal appeals. *Alaska v. United States*, 64 F.3d 1352, 1356 (9th Cir. 1995). This public objective must be *lost* if not appealed before trial. *Id.* We have held that the asserted right to avoid trial or take part in litigation is not a qualifying injury for the third element for a private party. *Takasi*, 2022 MP 01 ¶ 7 (citing *Will v. Hallock*, 546 U.S. 345, 350–51 (2006)). However, we have not stated whether the Commonwealth has such a right that would constitute a qualifying injury, if lost.

¶ 8    Reyes asserts—and the Commonwealth does not dispute—that the only possible public objectives in this case are the right of the Commonwealth to be free from trial and the desire to save litigation costs for the government. We will address each in turn.

### A. The Commonwealth does not have a right to be free from litigation.

¶ 9    The GLA states the "Commonwealth government shall be liable in tort for damages arising from the negligent acts of employees of the Commonwealth acting within the scope of their office or employment." 7 CMC § 2202(a). The Commonwealth argues that before any determination is made about the relevant employee's actions being within the scope of their employment, the government has not consented to be sued on the basis of sovereign immunity. The Commonwealth asserts that, because sovereign immunity includes a right to be free from trial, the lower court's order is tantamount to a denial of sovereign immunity and must be appealable at this stage of litigation. We disagree.

¶ 10    We are unconvinced that the Commonwealth has a right to be free from trial. The Commonwealth cites two precedential cases to support its assertion that any Commonwealth sovereign immunity would incorporate a right to be free from trial, rather than the less extensive right to be free from liability. Neither case, however, addresses this exact issue.

¶ 11    The Commonwealth first cites to *Elameto v. Commonwealth*, 2018 MP 15, involving a constitutional challenge to the GLA. The Court stated that an individual government employee had a right not to stand trial because of the substitution provision in the GLA. *Id.* at ¶ 12. This right is completely distinct from any right held by the Commonwealth, and our finding that this statement in *Elameto* includes the right of the government to not stand trial would be an expansion of the law. An individual employee has immunity because the language of the GLA specifically provides it: the substitution provision of the GLA states that an individual employee covered by the GLA will be substituted out for the Commonwealth. 7 CMC § 2210(a). It is a false equivalency to state that the Commonwealth and an individual employee are in the same position when they are the named party, because the GLA almost explicitly gives the individual a right not to stand trial and states that the Commonwealth will allow liability when necessary.

¶ 12    Similarly, *Kabir v. CNMI Pub. Sch. Sys.*, 2009 MP 19, does not support a right to be free from trial for the Commonwealth. *Kabir* considers the Legislature's intent to save litigation costs for the Commonwealth by deciding "immunity-related issues" early in the claim process, during certification that the employee was acting in the scope of their employment when committing the alleged tort. *Id.* at ¶ 37. This alleged immunity comes from the fact that the government is not liable for the employee's actions if outside the scope of their duties, a factual determination made in each case, and not because of the government's inherent sovereignty.

¶ 13    Both parties thus cite federal case law to support their positions for and against the Commonwealth having a right to be free from trial in relation to the GLA. The GLA is modeled after the Federal Tort Claims Act, and both laws include the relevant scope-of-employment provision. *E.g. Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006). We find cases interpreting the Federal Tort Claims Acts within the federal court system to be persuasive.

¶ 14    The majority of federal circuits have determined that federal sovereign immunity is only a freedom from liability. Reyes's main supporting case, *Alaska v. United States*, denied appellate jurisdiction under the collateral order doctrine. 64 F.3d at 1354. There, the state of Alaska sued the federal government to quiet title on three Alaskan riverbeds, but the United States moved to dismiss on the grounds of federal sovereign immunity. *Id*. When the trial court denied the federal government's motion, it filed an interlocutory appeal, also based on the trial court order being tantamount to a denial of sovereign immunity. *Id.* at 1356. The Ninth Circuit held that the collateral order doctrine did not allow jurisdiction because federal sovereign immunity is not a right to be free from trial. *Id.* at 1355. The court stated that, when viewing sovereign immunity as the limited "right not to be subject to a binding judgment," it could be vindicated effectively after trial. *Id.* As sovereign immunity was the only alleged reason the order was effectively unreviewable on final appeal, requiring the government to proceed in the quiet title action would neither infringe on the federal government's right to be free

from liability nor cause it a hardship sufficient for the collateral order doctrine. *Id.*

¶ 15     Two other federal circuits have reached the same conclusion as *Alaska*. The Seventh Circuit in *Pullman Constr. Indus. v. United States* also found federal sovereign immunity did not satisfy the collateral order doctrine because it does not grant freedom from trial. 23 F.3d 1166 (7th Cir. 1994). The federal government attempted to file an interlocutory appeal of a bankruptcy court's determination that a company reorganizing in bankruptcy could recover tax payments. *Id.* at 1167. The government argued that the immediate appeal was necessary to assert sovereign immunity as a right not to be sued. *Id.* at 1167–68. The court disagreed and concluded that federal sovereign immunity, unlike other enumerated kinds of immunities, is "only a right to *prevail* at trial—a right to win, indistinguishable from all the other reasons why a party many not have to pay damages." *Id.* at 1169. "An elaborate system permitting some monetary claims and limiting or forbidding others does not imply that the United States retains a general 'right not to be sued' in its own courts, for civil litigation in general." *Id.* at 1168. The court found that federal sovereign immunity is limited as a defense to the payment of money, rather than any dignity right to not be forced into all litigation. *Id.*

¶ 16     The Fifth Circuit in *Houston Cmty. Hosp. v. Blue Cross Blue Shield of Texas* also stated that a denial of federal sovereign immunity is not subject to immediate review. 481 F.3d 265, 280 (5th Cir. 2007). After the trial court denied Blue Cross Blue Shield summary judgment under the theory of federal sovereign immunity, it attempted to appeal under the collateral order doctrine. *Id.* at 267–68. Without deciding whether the federal healthcare provider could utilize the immunity as a defense, the court found federal sovereign immunity "is not a right not to be sued," in concurrence with *Alaska* and *Pullman*. *Id.* at 277, 279. The appeal was dismissed for want of jurisdiction. *Id.* at 280.

¶ 17     Only one case involving federal sovereign immunity in federal court has stated that a right to be free from *trial* requires immediate appeal—*In re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999). This case was an appeal of an order in a criminal contempt case against a federal agency, the Office of Independent Counsel. The court disagreed with the other circuits that federal sovereign immunity would be limited only to a right from liability in a criminal case. *Id.* at 1000. Criminal contempt charges against an agency were so far removed from the administrative issues in the other circuit cases that they were easily and explicitly distinguished by the DC Circuit. *Id.* at 999. Notably, the court openly decided not to determine if there is a right to be free from trial and allowed the case to continue to the merits without first deciding jurisdiction. *Id.* at 1001. The court in *Houston Community Hospital* also recognized that *In re Sealed Case* must be distinguished from most cases considering this issue. 481 F.3d at 279.

¶ 18     Since the only opposing case was decided "under circumstances too distinguishable to create a circuit split," *id.*, we find that federal case law

overwhelmingly points towards the Commonwealth having no right to be free from trial. Suits against the federal government brought in federal district courts are the most analogous to a suit against the Commonwealth in the Superior Court—and the most instructive on this issue, given the similarity between the GLA and its federal counterpart.

¶ 19    When confronted with this issue, a strong majority of states and territories have also found that their governments are entitled only to a freedom from liability. *Brown v. Wong*, 71 Haw. 519, 522–23 (1990) (declining to recognize a denial of a motion to dismiss on the basis of sovereign immunity as a collateral order and stating "the State, in every case, could seek to use the claim of sovereign immunity as a vehicle for having numerous genuine material factual issues reviewed on appeal, despite a denial of summary judgment. Piecemeal appeals in cases where the State was involved would become routine."); *Quigley v. Garden Valley Fire Prot. Dist.*, 444 P.3d 688 (Cal. 2019) (utilizing legislative intent to determine that immunity for state entities is not a jurisdictional bar, but an affirmative defense, for a tort liability statute that is not equivalent to the GLA); *Dep't of Ed. v. Roe*, 679 So. 2d 756, 759 (Fla. 1996) (finding no right to be free trial for the state and clarifying that bearing the cost of litigation is not a loss sufficient for a collateral order); *State v. Jett*, 558 A.2d 385, 389 (Md. Ct. App. 1989) (finding that a lower court's rejecting a defense of sovereign immunity is not appealable under the collateral order doctrine and further clarifying that any denial of an interlocutory appeal would not impact the tort claim act's goal of limiting litigation costs because to do so would require an assumption that the act applied to this case—a factual issue yet to be determined); *Carmona v. Hagerman Irrigation Co.*, 1998-NMSC-007 n. 5 (stating that the state tort claims act contemplates only a right to be free from immunity); *VI Hosps. and Health Fac. v. Gumbs*, 2023 VI 11 (holding that an order is not immediately appealable solely for denying the government an entitlement to a bench trial, because the case could be remanded for a bench trial if a future appellate court determined that the ordered jury trial was disallowed by the tort claims act). This strong support for a finding of freedom from liability only is highly persuasive.

¶ 20    Only one state to date has allowed immediate appeal of a denial of summary judgment on sovereign immunity grounds because of a right to be free from trial. Pennsylvania's collateral order doctrine is codified in their Rules of Appellate Procedure and the relevant rule compelled the court's finding. *Brooks v. Ewing Cole*, 259 A.3d 359 (Pa. 2021). Pennsylvania's stance opposite the vast majority of state court determinations is due to their codified collateral order doctrine. As we are not bound by any such statute and rely exclusively on common law doctrine to allow this interlocutory appeal, *Brooks* is unpersuasive in diverting us from the majority position.

¶ 21    The Commonwealth points to one final class of cases to support their right to be free from trial: state and territorial governments sued in federal court under the Eleventh Amendment. The Supreme Court in *Puerto Rico Aqueduct & Sewer*

*Auth. v. Metcalf & Eddy* found that the collateral order doctrine did apply to Eleventh Amendment immunity because the amendment is not merely a defense to liability. 506 U.S. 139 (1993). The underlying suit was a diversity action in federal court against a Puerto Rican government instrumentality for contractual damages. The Court acknowledged that allowing immediate appeal on the basis of the Eleventh Amendment was in part to save states from being "unduly burdened by litigation" but mostly because of the states' important dignitary interest of not being subjected "to the coercive process of judicial tribunals at the instance of private parties" in a federalist system. *Id.* at 146.

¶ 22    The justifications used by the Supreme Court in *Puerto Rico* distinguish the issue before us today. Most importantly, the question of immunity under the Eleventh Amendment is irrelevant to the Commonwealth: this case is not before a federal court and the Covenant has excluded the Eleventh Amendment from applicability to the Commonwealth. *See* Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, 48 U.S.C. § 1801 note § 501.

¶ 23    Furthermore, a facial reading of the GLA indicates that the Commonwealth does not desire to be unburdened by litigation at the expense of its employees facing such litigation. The Commonwealth has generally allowed tort suits against it under the GLA. 7 CMC § 2202(a) ("The Commonwealth government shall be liable in tort for damages"). The substitution provision of the GLA clearly specifies that the Commonwealth serves as the defendant for torts alleged against employees acting in their scope of employment—meaning the Commonwealth anticipates litigating any valid claim brought under the GLA. 7 CMC § 2210(a); PL 15-22 (establishing the substitution provision of the GLA) ("Commonwealth employees are still being unnecessarily sued in their individual capacities for actions performed as employees of the Commonwealth, even though the Commonwealth is liable for their actions and no individual liability can attach to the employee.").

¶ 24    The GLA statutorily "creates and limits governmental immunity." *Kabir*, 2009 MP 19 ¶ 40 n. 23. In doing so, the GLA does not create or enhance any right of the Commonwealth's to be free from trial if the Commonwealth objects to the procedure utilized in the lower court. This case presents us with the Commonwealth being sued in the Superior Court, analogous to any other sovereignty brought to court in their own judicial system. Both federal and state case law lead us to find that the Commonwealth enjoys no right of freedom from trial or litigation generally. Without such a right, we must consider an alternative and sufficiently important interest to support application of the collateral order doctrine.

### B. There is no litigation-cost-saving measure to consider.

¶ 25    Reyes argues that the only possible other public objective in this case is the Commonwealth's desire to save litigation costs. The Commonwealth supplies no alternative basis, nor can this Court find any, that would require us to assert jurisdiction over an interlocutory appeal of the lower court's order.  Accordingly,

we must only consider whether any costs saved by the Commonwealth would be a sufficient reason to satisfy the collateral order doctrine.

¶ 26     Commonwealth law is clear that a requirement to participate in litigation, which would include incurring litigation expenses, is an insufficient public policy consideration to outweigh a preference to avoid piecemeal appeals. *Takasi*, 2022 MP 01 ¶ 7. Other jurisdictions have found litigation costs to be an insufficient reason for an issue to be effectively unreviewable on appeal. *E.g.*, *N.J. Dep't of Treasury, Div. of Inv. v. Fuld*, 604 F.3d 816, 823 (3d Cir. 2010) (quoting *Will*, 546 U.S. at 351).

¶ 27     The GLA's substitution provision states that the Commonwealth will be substituted as the defendant when a claim is made against the employee, the Commonwealth will pay damages and costs as required, and the suit against the employee will be dismissed. 7 CMC § 2210(a). When this section was amended by the Commonwealth Employees' Liability Reform and Tort Compensation Act of 2006, the Legislature stated that the substitution provision was specifically meant to save the Commonwealth from funding a defense for both the employee and the government. PL 15-22.

¶ 28     If the Commonwealth substitutes in for every employee who was acting within the scope of their employment, a suit against either the Commonwealth or an employee will result in the same expenditure of litigation costs by the Office of the Attorney General. When the same office may expect, generally, to litigate the same case—whether representing the Commonwealth itself or an individual employee prior to substitution—there is no concrete harm suffered that would require an interlocutory appeal.

¶ 29     The Commonwealth loses nothing by having to wait for a final order to appeal the court's order of partial summary judgment. This order is still reviewable after a trial because no additional funds will have been expended in defending an additional party and this Court may still consider the issue of whether the proper administrative procedure was followed for certification of the scope of employment. "[A]lthough the state will have to bear the expense of continuing the litigation, the benefit of immunity from liability . . . will not be lost simply because review must wait until after final judgment." *Roe*, 679 So. 2d at 759.

¶ 30     In determining the applicability of the collateral order doctrine to any appeal, we must "focus on whether an immediate appeal should be available for the *category* of orders at issue," rather than engaging with the particular facts of only one appeal. *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1035 (10th Cir. 2022). Suits under the GLA make up a not insignificant portion of cases filed in the trial court, but we do not see many of these cases presenting the same procedural posture as this. We expect that most suits under the GLA have been brought against an individual employee and have already undergone the scope-of-employment certification in 7 CMC § 2210(a).

¶ 31    To engage further with the specific facts of this appeal in relation to the question of a litigation-cost-saving objective not only takes us further from the "category of orders" in GLA-based suits, but also requires speculation on the underlying merits of this appeal. The Florida Supreme Court faced a similar dilemma:

> it cannot be said that suits against governmental entities grounded upon the statutory waiver of sovereign immunity constitute a small class of cases. To the contrary, permitting interlocutory appeals in such cases would add substantially to the caseloads of the district courts of appeal. Moreover, in light of the statutory waiver, it can no longer be said that the issue of sovereign immunity is always independent of the cause itself. Oftentimes, the applicability of the sovereign immunity waiver is inextricably tied to the underlying facts, requiring a trial on the merits. Thus, many interlocutory decisions would be inconclusive and in our view a waste of judicial resources.
> *Roe*, 679 So. 2d at 758.

¶ 32    As in other cases exploring the scope of a government's consent to be sued, litigation under the GLA will generally continue "with the same parties, exploring the same general question," regardless of whether there was an interlocutory appeal or not. *Pullman*, 23 F.3d at 1169. With no injury to any dignity right, *Alden v. Maine*, 527 US 706, 715 (1999) and *supra* at ¶ 23, and without exploring the underlying merits of whether an employee was within their scope of employment or whether the proper administrative procedure was observed in this case, the Commonwealth has no irreparable injury that would be effectively unreviewable on appeal. The third element of the collateral order doctrine is left unsatisfied, and there remains no other vehicle for interlocutory appeal.[1]

## IV. CONCLUSION

¶ 33    We find that we are without jurisdiction to hear this appeal. The Commonwealth, insofar as it holds any non-waived immunity from suit, does not enjoy a complete right to be free from trial and any cost-saving measure in the GLA is insufficient to require an interlocutory appeal. For the foregoing reasons, we find no basis to assert the collateral order doctrine and DISMISS the appeal for want of jurisdiction.

SO ORDERED this 13th day of November, 2024.

---

[1]    While the Legislature has authorized interlocutory appeals by statute in other areas of the law, none are applicable to the Commonwealth in this appeal. *See Pullman*, 23 F.3d at 1169 ("Congress is free to authorize interlocutory appeals by the United States, but unless it does so the federal government, like private litigants, must wait for the final decision.").

_____/s/_____
ALEXANDRO C. CASTRO
Chief Justice


_____/s/_____
JOHN A. MANGLOÑA
Associate Justice


_____/s/_____
SABRINA S. MCKENNA
Justice Pro Tempore

COUNSEL

Joseph E. Horey, Saipan, MP for Appellee.

Edward Manibusan, Attorney General, Saipan, MP;
J. Robert Glass, Jr., Chief Solicitor, Saipan, MP, for Appellant.

NOTICE

*This order has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this order and the order certified for publication, the certified order controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165, Saipan, MP 96950; phone (670) 236–9715; or e-mail Supreme.Court@NMIJudiciary.gov.*