**UNITED STATES of America, ex rel. Ronald E. LONG, Appellee/Cross–Appellant,**

v.

**SCS BUSINESS & TECHNICAL INSTITUTE, INC., et al., Appellees.**

**State of New York, Appellant/Cross–Appellee.**

**Attorney General of the United States, Intervenor.**

**Nos. 98–5133, 98–5149 and 98–5150.**

United States Court of Appeals, District of Columbia Circuit.

April 30, 1999.

Howard L. Zwickel, Assistant Attorney General, State of New York, argued the cause for appellant/cross-appellee. With him on the briefs was Peter H. Schiff, Deputy Solicitor General.

Ronald A. Shems, Assistant Attorney General, State of Vermont, argued the cause for amici curiae State of Vermont, et al. With him on the brief was William H. Sorrell, Attorney General.

Douglas N. Letter, Appellate Litigation Counsel, United States Department of Justice, argued the cause for United States as intervenor. With him on the briefs were Frank W. Hunger, Assistant Attorney General, and Wilma A. Lewis, United States Attorney. Richard L. Cys entered an appearance.

Stuart F. Pierson argued the cause and filed the briefs for appellee/cross-appellant.

Jill A. Dunn was on the notice of joinder in brief for appellant Joseph P. Frey.

Mark B. Rotenberg was on the brief for amicus curiae The Regents of the University of Minnesota.

Before: WALD, SILBERMAN, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

## SUPPLEMENTAL OPINION

SILBERMAN, Circuit Judge:

In the same week that our opinion issued, the Fifth Circuit held that the Eleventh Amendment bars a False Claims Act *qui tam* suit against a state in federal court. *See United States ex rel. Foulds v. Texas Tech University*, 171 F.3d 279 (5th Cir.1999). The court thought it was obliged to decide that issue before reaching the question we decided—whether the statute provides for a *qui tam* action against a state—because the Eleventh Amendment issue is jurisdictional. Although we certainly discussed the serious nature of the Eleventh Amendment issue as it bore on our order of decision, we did not consider whether, as a matter of judicial authority, we too were *obliged* to decide that issue. Since our sister circuit implicitly challenged our jurisdiction—even though no party before us did—and our mandate has not issued, under these unusual circumstances, we think it appropriate to issue this supplemental opinion to explain why we believe we should stick with the order of decision we adopted.

The Fifth Circuit reasoned as follows: since the question whether a relator can sue a state under the Act is a cause of action or merits question, and since the question whether a federal court can hear such a suit under the Eleventh Amendment is a jurisdictional one, the latter must be resolved before the former. *See id.* at 286. The principal authority that the Fifth Circuit relied on is *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), in which the Supreme Court held that a question of Article III standing must be decided before the statutory question whether a cause of action exists. *See id.* at ——— ———, 118 S.Ct. at 1012–16. In so holding, the Court rejected the doctrine of "hypothetical jurisdiction," under which lower courts—including this one, *see, e.g., Cross–Sound Ferry Servs., Inc. v. ICC*, 934 F.2d 327, 333 (D.C.Cir.1991)—had assumed jurisdiction in order to reach the merits, where the merits question was easier and the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied. *See Steel Co.*, 523 U.S. at ——, 118 S.Ct. at 1012 (disapproving of *Cross–Sound* and other lower court decisions). The doctrine, the Court said, is

flatly inconsistent with core principles limiting the role of Article III courts: "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Id.* at ——, 118 S.Ct. at 1016.

We did not address this *Steel Co.* question in our opinion, we confess, because we did not focus on it. Indeed, New York—whose immunity from suit is at stake—specifically urged us, apparently unlike Texas in *Foulds,* to decide the statutory question first on the ground that nonconstitutional grounds should be considered before constitutional ones. Admittedly, we ordinarily are obliged to raise jurisdictional questions on our own, so the parties' litigating tactics would not excuse our oversight. Still, the Eleventh Amendment bar on suits against the states in federal court is not a garden variety jurisdictional issue. Although the Amendment speaks in terms of the limits of the judicial power, *see* U.S. CONST. AMEND. XI ("The Judicial power of the United States shall not be construed to extend...."), a state can waive its Eleventh Amendment defense and consent to suit in federal court, and the Supreme Court has held that there is no obligation for the Court to raise the issue *sua sponte. See Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, —— – ——, 118 S.Ct. 2047, 2052–53, 141 L.Ed.2d 364 (1998) (citing *Atascadero State Hsp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) and *Patsy v. Board of Regents of Fla.,* 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)).

To be sure, the Court has also held that the "Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court," *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *see Burkhart v. Washington Metropolitan Area Transit Authority,* 112 F.3d 1207, 1216 (D.C.Cir.1997), and indeed can be raised for the first time in the Supreme Court, *see Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Given these somewhat conflicting rules, *see Schacht,* 524 U.S. at ——, 118 S.Ct. at 2055 (Kennedy, J., concurring), the Court has frankly recognized that the Eleventh Amendment is a rather peculiar kind of "jurisdictional" issue. *See Calderon v. Ashmus,* 523 U.S. 740, —— n. 2, 118 S.Ct. 1694, 1697 n. 2, 140 L.Ed.2d 970 (1998) ("While the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings, we have recognized that it is not coextensive with the limitations on judicial power in Article III."); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) ("The Amendment, in other words, enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction."). The Court's most recent opinion noted that the question whether Eleventh Amendment immunity is a matter of subject matter jurisdiction is an open one. *See Schacht,* 524 U.S. at ——, 118 S.Ct. at 2054.

■ New York's explicit request that we first decide the statutory question could therefore be seen as a kind of agreement to assert its Eleventh Amendment defense *only* if it loses on the statutory one (a "springing" defense, as it were). As the Supreme Court has recently made clear, "[t]he Eleventh Amendment ... does not automatically destroy original jurisdiction," but instead "grants the State a legal power to assert a sovereign immunity defense *should it choose to do so."* *Schacht,* 524 U.S. at ——, 118 S.Ct. at 2052 (emphasis added). A state can waive its immunity from suit in the context of a litigation, *see, e.g., Ford Motor Co.,* 323 U.S. at 467–69, 65 S.Ct. 347, as long as it does so unequivocally, *see Atascadero,* 473 U.S. at 246–47, 105 S.Ct. 3142. Although there are difficult questions about whether

the state's attorneys must be authorized by state law to waive the state's immunity, and about whether such authorization, if needed, has been granted, *compare id.* (suggesting that such authorization is necessary) *with Schacht,* 524 U.S. at —— ——, 118 S.Ct. at 2055–56 (Kennedy, J., concurring) (questioning whether in the removal context specific authorization is required), it may well be that New York's approach amounts to a partial consent to suit on the statutory question—subject to a later Eleventh Amendment defense. And if so, we might be *obligated* to decide the statutory question first.

But even if we were not so obligated, we think that we are at least permitted to do so. Had New York chosen not to assert its Eleventh Amendment defense below, or even before us, it would not have been precluded from raising it thereafter. *See Calderon,* 523 U.S. at —— n. 2, 118 S.Ct. at 1697 n. 2 (Eleventh Amendment "can be raised at any stage of the proceedings"); *but cf. Schacht,* 524 U.S. at ——, 118 S.Ct. at 2055 (Kennedy, J., concurring) (criticizing this rule because "permitting the belated assertion of the Eleventh Amendment bar ... allow[s] States to proceed to judgment without facing any real risk of adverse consequences"). Unless that defense is asserted by the state, a court is arguably not obliged to raise the issue itself since the Supreme Court has made clear that the usual obligation to raise jurisdictional issues *sua sponte* does not apply (at least to the Court itself) in Eleventh Amendment cases. *See Patsy,* 457 U.S. at 515 n. 19, 102 S.Ct. 2557.[1] Therefore New York's litigation strategy—an Eleventh Amendment argument in the alternative—suggests that, at least, we are entitled to reverse the *Steel Co.* order. After all, *Steel Co.*'s rule is premised on a

court's lack of power to reach the merits without establishing its jurisdiction. In the Eleventh Amendment context, where a court lacks power only if a state claims that it does, it is arguable that we have no obligation to decide the Eleventh Amendment issue first if the state does not demand that we do so.

■ Moreover, the quasi-jurisdictional or "hybrid" status of the Eleventh Amendment, *see Schacht,* 524 U.S. at ——, 118 S.Ct. at 2055 (Kennedy, J., concurring), raises questions about *Steel Co.*'s applicability in this context, quite apart from New York's request that we interpret the statute first. Since the Eleventh Amendment at most "partakes of the nature of a jurisdictional bar," *Edelman,* 415 U.S. at 678, 94 S.Ct. 1347, it seems fair to ask whether the Eleventh Amendment is sufficiently jurisdictional to require us to decide a state's claim of Eleventh Amendment immunity before turning to the merits. One indication to the contrary is *Calderon,* in which the Supreme Court decided that it "must first address" whether a particular action for a declaratory judgment was an Article III case or controversy before deciding the Eleventh Amendment question on which *certiorari* had been granted, observing that the Eleventh Amendment is "not co-extensive with the limitations of judicial power in Article III." *Calderon,* 523 U.S. at —— & n. 2, 118 S.Ct. at 1697 & n. 2. As between two jurisdictional issues, there ordinarily is no obligation to decide one before the other. *See Steel Co.,* 523 U.S. at —— n. 3, 118 S.Ct. at 1015 n. 3; *In re Minister Papandreou,* 139 F.3d 247, 255 (D.C.Cir.1998) (stating that dismissing on nonmerits grounds such as personal jurisdiction or forum non conveniens, before deciding subject-matter jurisdiction, is permissible under *Steel Co.*).[2] That the

1. Whether the *Patsy* rule relieves lower courts of the *sua sponte* obligation to raise the Eleventh Amendment issue is a matter of some controversy. *See Coolbaugh v. Louisiana,* 136 F.3d 430, 442 n. 5 (5th Cir.1998) (Smith, J., dissenting) (collecting cases and authorities). We have raised an Eleventh Amendment

question on our own in a prior case, *see Morris v. Washington Metropolitan Area Transit Auth.,* 702 F.2d 1037, 1040 (D.C.Cir.1983), but do not appear ever to have held whether we must do so, notwithstanding *Patsy.*

2. The Fifth Circuit has concluded otherwise, holding that in the removal context, a district

Court in *Calderon* thought itself *obliged* to decide the case or controversy question first suggests that the Eleventh Amendment, a less than pure jurisdictional question, need not be decided before a merits question. One former judge of this court, in a concurring opinion criticizing the hypothetical jurisdiction doctrine later rejected in *Steel Co.*, pointed in that direction. *See Cross–Sound Ferry*, 934 F.2d at 341 (Thomas, J., concurring in part and concurring in the denial of petition) (reasoning that the rule requiring consideration of jurisdictional issues before non-jurisdictional issues might not apply if "the ground passed over sufficiently, though not entirely, 'partakes of the nature' of a merits ground, or if the ground rested upon 'sufficiently,' though not entirely, 'partakes of the nature of a jurisdictional bar' " (quoting *Edelman,* 415 U.S. at 678, 94 S.Ct. 1347)).

Another difficulty in applying *Steel Co.* here is that classifying the statutory question in an Eleventh Amendment case as a "cause of action" or merits question is, though technically accurate, somewhat misleading. The determination of whether a particular action is properly asserted against a state is also a kind of logical prerequisite to the jurisdictional inquiry. The Eleventh Amendment only bars a federal court from hearing a "suit in law or equity, commenced or prosecuted against one of the United States," and so it would

seem perfectly appropriate—perhaps even necessary—for courts to determine whether there is even such a suit before the court. That kind of inquiry—sometimes classified as "jurisdiction to determine our jurisdiction," *Nestor v. Hershey*, 425 F.2d 504, 511 (D.C.Cir.1969) (inquiring whether student deferment sought was mandated by statute or within the discretion of the draft board, as jurisdiction existed only for the former)—is fairly common, even though the rulings made in determining jurisdiction are made without certainty that jurisdiction actually exists. Occasionally, as in this case, what a court says about an issue of statutory interpretation that logically precedes the ultimate jurisdictional determination removes any contention that the court's jurisdiction is in question. *See, e.g., Webster v. Doe,* 486 U.S. 592, 603–04, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (using clear statement principles and the constitutional avoidance canon to hold that statutory provision did not, despite language indicating that the statute was committed to agency discretion, preclude judicial review of constitutional claims).

If the Eleventh Amendment were a statutory provision stripping the federal courts of jurisdiction, the inquiry whether the case before the court was of the kind that the statute forbade would be a fairly routine form of jurisdictional analysis.[3] Ac-

---

court must decide subject matter jurisdiction before personal jurisdiction. *See Marathon Oil Co. v. Ruhrgas,* 145 F.3d 211, 215–25 (5th Cir.) (en banc), *cert. granted,* —— U.S. ——, 119 S.Ct. 589, 142 L.Ed.2d 532 (1998).

**3.** One analogy is cases involving the Norris–LaGuardia Act's bar on federal courts issuing certain injunctions in labor disputes. *See* 29 U.S.C. § 104 (1994) ("No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute [from doing certain acts]."). Not surprisingly, the Supreme Court has had to interpret that provision, together with the provision defining it, *see id.* at § 113 ("A case

shall be held to involve or grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation...."), to determine whether particular kinds of cases fall within the jurisdictional bar. *See, e.g., Burlington Northern R. Co. v. Brotherhood of Maintenance of Way Employees,* 481 U.S. 429, 440–44, 107 S.Ct. 1841, 95 L.Ed.2d 381 (1987) (rejecting restrictive interpretation of Norris–LaGuardia Act, under which a "labor dispute" would only include disputes in which the picketed employer is "substantially aligned" with the primary employer); *United States v. United Mine Workers of America,* 330 U.S. 258, 269–89, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (interpreting general language of §§ 104 and 113 to exclude the United States, such that where the United States seizes actual possession of

cordingly, in determining whether the Eleventh Amendment bars a particular suit, federal courts must decide a variety of issues that relate to the question whether the suit is actually one brought against the state, and do so before jurisdiction is finally resolved. *See, e.g., Regents of the University of California v. Doe,* 519 U.S. 425, 429–30 & n. 5, 117 S.Ct. 900, 904 & n. 5, 137 L.Ed.2d 55 (1997) (noting that determining whether a state agency is an "arm of the state" for Eleventh Amendment purposes, such that the suit is one against the state itself, involves an analysis of the state law provisions that define the agency's character); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55–57, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (analyzing Indian Gaming Regulatory Act for the purpose of determining if Congress, consistent with Eleventh Amendment abrogation requirements, set forth a clear statement of its intent to provide for suits against the states in federal court, and concluding that it did); *Hafer v. Melo,* 502 U.S. 21, 24 n. *, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (discussing, although not resolving, competing methods for determining whether a suit for monetary damages is against a state official in his or her official capacity, and thus against the state itself, or against a state official in his or her personal capacity, to which the Eleventh Amendment does not apply).

Still, it might be thought that the "jurisdiction to determine jurisdiction" concept is not wholly satisfactory because whether states are persons under the False Claims Act is *also* a cause of action question (which is what the Fifth Circuit emphasized). But even if the cause of action aspect of the statutory question takes it outside the "jurisdiction to determine jurisdiction" doctrine, two additional considerations justify the approach we have taken.

As our discussion already indicates, the "merits" question is, in the Eleventh Amendment context, inextricably related to the "jurisdictional" question. We noted this relationship in our opinion in explaining why the Eleventh Amendment's clear statement rule, ordinarily applied to an abrogation inquiry, is relevant in determining whether there is a cause of action against the states. Even if we were to assume that states are defendant persons, and then actually to decide that the Eleventh Amendment applied, we would then have to ask whether, for abrogation purposes, the statute contains a clear statement that states are to be defendants— which is more-or-less the same statutory analysis that we previously undertook. This can be seen in the Fifth Circuit's opinion, where the court held that the state's Eleventh Amendment immunity was not abrogated because the Act did not contain the requisite clear statement. *See Foulds,* 171 F.3d at 292. The only real difference between the Fifth Circuit's analysis of the statute and our own is that the Fifth Circuit had to actually hold that the Eleventh Amendment applied—a serious constitutional issue—in order to get there.

We think this close relationship between the statutory and "jurisdictional" issues, even putting aside "jurisdiction to determine jurisdiction," provides an independent ground on which to distinguish *Steel Co.* The relationship between these two issues is quite different from the relationship between an ordinary "cause of action" question and a pure jurisdictional issue such as standing. The Court in *Steel Co.* rejected the contention that merits questions could be decided before constitutional standing questions because the Article III redressability requirement, for example, "has nothing to do with the text of the

mines or other facilities and operates them, and where the United States is the employer of the workers, the Norris–LaGuardia Act does not apply); *id.* at 250–51, 67 S.Ct. 677 (holding that district court properly issued restraining order to preserve existing condi-

tions while it determined whether it had jurisdiction to issue injunctive relief, and that it had power to punish violations of its orders as criminal contempt before the jurisdictional question was resolved).

statute relied upon" (except with regard to entirely frivolous claims). *Steel Co.*, 523 U.S. at —— n. 2, 118 S.Ct. at 1013 n. 2. By contrast, the Court explained why merits questions can be decided before statutory or prudential standing questions: the two questions overlap to such an extent that it would be "exceedingly artificial to draw a distinction between the two." *Id.* If an inextricable relationship between statutory standing and the merits permits a court to decide the merits first, the same order would seem appropriate for the two claims before us.

In addition, we do not think our approach even implicates the concerns underlying the Supreme Court's rejection of "hypothetical jurisdiction" because the statutory question is logically antecedent to the Eleventh Amendment question (even if it were not thought an aspect of "jurisdiction to determine jurisdiction"). We have not chosen to decide a pure (and relatively easier) merits question on the *assumption* that we have jurisdiction—the paradigm of the hypothetical jurisdiction model. When a court decides, as we do, that a statute does not provide for a suit against the states, there is no risk at all that the court is issuing a hypothetical judgment—an advisory opinion by a court whose very power to act is in doubt. *See Steel Co.*, 523 U.S. at ——, 118 S.Ct. at 1016. Rather, the conclusion that the statute does not provide for suits against the states in federal court is, in effect, a resolution of the jurisdictional question, in that the Eleventh Amendment can no longer be said to apply (which is quite different from saying, as courts do under the hypothetical jurisdiction doctrine, that jurisdiction does not matter because the same party arguing a lack of jurisdiction prevails on the merits). The Supreme Court recently adopted precisely this reasoning in decid-

ing a class action certification issue before an asserted "array of jurisdictional barriers," including ripeness, standing, and subject matter jurisdiction. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, ——, 117 S.Ct. 2231, 2244, 138 L.Ed.2d 689 (1997). The Court said that, because resolution of the class certification issues was "logically antecedent to the existence of any Article III issues, it [was] appropriate to reach them first." *Id.* The Fifth Circuit's view instead is that a court must *assume* that states are defendants under the Act and address the Eleventh Amendment question at the outset, lest the court give an interpretation of the statute that it has no power to give. *See Foulds*, 171 F.3d at 288 ("[I]f the Eleventh Amendment removes our jurisdictional authority to hear [the] case, we have no power to determine whether the False Claims Act creates a cause of action against states . . . ."). But such an approach ostensibly avoids the evils of "hypothetical jurisdiction" (not really at issue) in favor of deciding a purely hypothetical jurisdictional issue—that is, a jurisdictional issue that arises *solely by virtue* of the statutory question assumed. Since the Eleventh Amendment issue in this case "would not exist but for" that assumption, *Amchem*, 521 U.S. at ——, 117 S.Ct. at 2244 (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 623 (3d Cir.1996)), we think it is appropriate for us to decide the logically prior issue first.[4]

Perhaps most important, our reasoning is confirmed by several Eleventh Amendment cases in which the Supreme Court itself has decided "cause of action" questions before turning to the Eleventh Amendment. *See, e.g., Hafer*, 502 U.S. at 21–30, 112 S.Ct. 358 (holding that state officials sued in their individual capacities are persons under 42 U.S.C. § 1983, and

---

4. Of course, we recognize some tension between *Amchem* and *Steel Co.*, in that a cause of action question is, in a sense, logically antecedent to jurisdiction too: without a cause of action, the question whether a party satisfies jurisdictional requirements would not arise. Yet *Steel Co.* clearly requires a court to decide jurisdiction first. But the Court did not cast any doubt on *Amchem* in *Steel Co.*, and we think logical priority, as in *Amchem*, should control here.

then holding that the Eleventh Amendment presents no bar to such a suit); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 398–402, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (deciding that a claim against an interstate compact that required federal approval was a claim alleging a deprivation of constitutional rights "under color of state law" within the meaning of § 1983, and then deciding that the compact was not entitled to Eleventh Amendment immunity) [5]; *Monell v. Department of Social Servs.,* 436 U.S. 658, 664–90 & n. 54, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (deciding that municipalities are persons under § 1983 and, in conclusion, noting that the Eleventh Amendment would not bar such suits to the extent that a municipality is not considered a part of the state for Eleventh Amendment purposes); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278–80, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (deciding first that the contention that municipalities were not persons under § 1983 was a merits question that had been waived, and then deciding that the Eleventh Amendment does not bar a suit against a municipality in federal court); *see also Doe v. Chiles,* 136 F.3d 709, 713–21 (11th Cir.1998) (deciding first that a provision of the Medicaid Act created a federal right to reasonably prompt provision of assistance enforceable under § 1983, and only then concluding that the suit was not barred by the Eleventh Amendment). Though these cases predate *Steel Co.,* we think they lend considerable support—albeit implicit—to our approach.

On the other hand, the Court in *Welch v. Texas Department of Highways and Public Transportation,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), decided an Eleventh Amendment abrogation question and specifically reserved the question whether the statute created a cause of action. *See id.* at 476 n. 6, 107 S.Ct. 2941 ("Because Eleventh Amendment immunity 'partakes of the nature of a jurisdictional bar,' we have no occasion to consider the State's additional argument that Congress did not intend to afford seamen employed by the States a remedy under the Jones Act" (quoting *Edelman,* 415 U.S. at 678, 94 S.Ct. 1347)). This decision is hardly support for our position. But we do not think the Court's comment that it had "no occasion" to consider the cause of action question fairly should be read as a holding that cause of action questions *must* be decided second. *See also Petty v. Tennessee–Missouri Bridge Com'n,* 359 U.S. 275, 277–83, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959) (holding that the two states had waived their Eleventh Amendment immunity from suit in an interstate compact, and only then deciding that interstate compacts were not exempt from the term "employer" in the Jones Act, but giving no indication that that order of decision was required). If that were so, *Welch* would be flatly inconsistent with the cases cited above. Again, the Court in *Welch* referred to the quasi-jurisdictional nature of the Eleventh Amendment—that it "partakes" of the nature of a

---

5. *Lake Country Estates* went so far as to state that this order of decision was *required. See Lake Country Estates,* 440 U.S. at 398, 99 S.Ct. 1171 ("Before addressing the immunity issues [of which the Eleventh Amendment was one], we must consider whether petitioners properly invoked the jurisdiction of a federal court [under 28 U.S.C. § 1331]."). Of course, as the Court went on to explain, the question whether a plaintiff has a federal cause of action sufficient to create jurisdiction under § 1331 is not itself a jurisdictional argument (except in the rare circumstances in which the cause of action is frivolous, *see Steel Co.,* 523 U.S. at ——, 118 S.Ct. at 1010 (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946))). *See Lake Country Estates,* 440 U.S. at 398, 99 S.Ct. 1171 ("[R]espondents' 'jurisdictional' arguments are not squarely directed at jurisdiction itself, but rather at the existence of a remedy for the alleged violation of their federal rights."). Still, after identifying the argument as a cause of action argument, the Court resolved that issue before even turning to the Eleventh Amendment question. If the Fifth Circuit were right, the Court should have assumed the cause of action existed once it satisfied itself that the claim was not a jurisdictional one.

jurisdictional bar—which of course suggests that the order of decision adopted was not a mandatory one.

Nor do we think, as did the Fifth Circuit, *see Foulds,* 171 F.3d at 286, that *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), is to the contrary. The Supreme Court did note in *Blatchford* that, given the Eleventh Amendment bar, it would not express a view about whether the respondent was a "tribe" within the meaning of the statute in question, *see Blatchford,* 501 U.S. at 788 n. 5, 111 S.Ct. 2578. But the statutory question was not a "cause of action" question at all but rather a question concerning the jurisdictional statute under which the respondent had sued, *see* 28 U.S.C. § 1362 (providing for federal court jurisdiction for suits by tribes involving federal law). At most, the Court in *Blatchford,* for reasons not entirely clear to us, decided the case on Eleventh Amendment jurisdictional grounds instead of addressing a purely statutory jurisdictional argument—whether the tribe had even established jurisdiction in the first place as a "tribe" under § 1362—that could have made unnecessary its various constitutional holdings. *See id.* at 779–82, 111 S.Ct. 2578 (holding that suits by tribes are barred by the Eleventh Amendment); *id.* at 783–86, 111 S.Ct. 2578 (holding that § 1362 did not effect a delegation of the United States' exemption from the Eleventh Amendment bar to tribes); *see id.* at 786–88, 111 S.Ct. 2578 (holding that § 1362 did not abrogate the states' Eleventh Amendment immunity).[6] And again, while there does not appear to be a requirement that some jurisdictional grounds be decided before others, *see Steel Co.,* 523 U.S. at —— n. 3, 118 S.Ct. at 1015 n. 3, the Court's statement in *Calderon* that it was required to decide a case or controversy question before reaching the Eleventh Amendment, *see Calderon,* 523 U.S. at ——, 118 S.Ct. at 1697, casts considerable doubt on *Blatchford's* order of decision. In any event, *Blatchford* certainly cannot be said to mandate the Fifth Circuit's view that the Eleventh Amendment issue must always be decided first.

We have taken pains to discuss the issue that the Fifth Circuit identified because of its importance. Although the issue is complex, and the case law not altogether clear, we are confident that no authority or principle *prohibits* our approach. And because it has the significant virtue of avoiding a difficult constitutional question, we think it is also the preferable one.

---

6. The Ninth Circuit, interestingly enough, had decided the statutory jurisdictional question before turning to the Eleventh Amendment issues. *See Native Village of Noatak v. Hoffman,* 896 F.2d 1157, 1160–61 (9th Cir.1990), *rev'd,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). The Supreme Court obviously chose a different order, but did not in any way purport to reject this aspect of the Ninth Circuit's approach.